FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 2 2 2010 ★
BROOKLYN OFFICE

11-cr-588 (JBW)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 1 3 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

ERIC BUTLER,

        Defendant.

08-CR-370

Sentencing Statement of
Reasons Pursuant to
18 U.S.C. § 3553(c)(2)

JACK B. WEINSTEIN, Senior United States District Judge:

A sentencing court shall "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is not of the kind prescribed by, or is outside the range of, the sentencing guidelines referred to in section 3553(a)(4), the court shall indicate the specific reasons for imposing a sentence different from the guidelines. 18 U.S.C. § 3553(c)(2). These "reasons must also be stated with specificity in the written order of judgment and commitment." Id. Even though the mandatory nature of the guidelines has been excised and they are now "advisory," see United States v. Booker, 543 U.S. 220, 245-46 (2005), the sentencing court must still adhere to the requirements of 18 U.S.C. § 3553(c)(2). United States v. Jones, 460 F.3d 191, 197 (2d Cir. 2006).

The sentencing court's written statement of reasons "explain[s] why the guidelines range did not account for a specific factor or factors under § 3553(a)." United States v. Rattoballi, 452 F.3d 127, 138 (2d Cir. 2006). Such a statement should demonstrate that the court "considered the parties' arguments and that it has a reasoned basis for exercising its own legal decisionmaking authority." United States v. Cavera, 550 F.3d 180, 193 (2d Cir. 2008) (quoting Rita v. United States, 551 U.S. 338, 356 (2007)) (internal quotations and alterations omitted).

On August 17, 2009, Eric Butler was convicted by jury verdict of all counts of a three-count superseding indictment. His trial laid bare the pernicious and pervasive culture of corruption in the financial services industry. The blame for this condition is shared not only by individual defendants like Butler, but also by the institutions that employ them, those who carelessly invest, and those who fail to regulate. Supervision is seriously negligent; greed and short-term gain are so enormous that fraud and arrogant disregard of others' rights and of ethics almost encourage criminal activities such as defendant's.

Count One charged that between November 2004 and August 2007, Butler, together with others, conspired to use and employ manipulative and deceptive devices contrary to Rule 10b-5 of the Rules and Regulations of the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5, by making untrue and misleading statements of material fact and omitting to state material facts and by engaging in acts and courses of business which operated as a fraud and deceit upon corporate clients in connection with the purchases and sales of auction-rate securities ("ARS") directly or indirectly through interstate commerce and the mails, in violation of 15 U.S.C. §§ 78j(b) and 78ff, both in violation of 18 U.S.C. § 371.

Count Two charged that between November 2004 and August 2007, Butler, together with others, used and employed manipulative and deceptive devices contrary to Rule 10b-5 of the Rules and Regulations of the SEC, 17 C.F.R. § 240.10b-5, by making untrue and misleading statements of material fact and omitting to state material facts and by engaging in acts and courses of business which operated as a fraud and deceit upon corporate clients in connection with the purchases and sales of ARSs directly or indirectly through interstate commerce and the mails, in violation of 15 U.S.C. §§ 78j(b) and 78ff.

Count Three charged that between November 2004 and August 2007, Butler, together with others, conspired to devise a scheme to defraud, and obtain money and property by means

2

of materially false and fraudulent pretenses, and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, in violation of 18 U.S.C. §1343, all a violation of 18 U.S.C. § 1349.

The sentencing proceeding was videotaped in order to develop an accurate record of the courtroom atmosphere and the factors and considerations that a district court must evaluate in imposing a sentence under 18 U.S.C. § 3553(a). See In re Sentencing, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) (utility on appeal).

The government contended that defendant faced a guidelines range of life imprisonment, and a statutory maximum of 45 years. It requested a sentence of at least fifteen years' imprisonment and restitution of approximately $1.1 billion. Defendant requested probation without any incarceration.

Because of the severe impact of defendant's frauds on the international short- and long-term securities markets, and other complexities presented by this sentencing, I requested that the Chief Judge of this court convene an advisory panel of judges of the court and an expert on sentencing guidelines from the court's Probation Department to meet with me before the sentence. Each member was provided with a full case file.

This procedure was routine in this court before the sentencing guidelines were adopted. It was abandoned with the advent of rigid by-the-numbers sentencing under the Sentencing Commission's direction. Upon the reinstitution of discretionary sentencing by the Supreme Court, this court has re-adopted the sentencing panel practice, but only when requested by the sentencing judge. Consultation among trial judges, using the guidelines as advisory, has been encouraged by the most astute students in the field of sentencing. See, e.g., Neil A. Lewis, Daniel J. Freed Dies at 82; Shaped Sentencing in U.S., N.Y. Times, Jan. 22, 2010, at A19 ("Professor Freed had urged judges to reason among themselves" about sentencing.).

The consensus among the consulting judges in this case was that, based upon the guidelines, the vast damages caused by defendant's acts, and the difficulty of quantifying the damage, a sentence of between six and ten years in prison was appropriate.

I have imposed a lesser sentence of five years' imprisonment plus three years of supervised release, with loss of all defendant's assets and a heavy fine, for two primary reasons: first, defendant's young child and loving wife suggest the desirability of defendant's early presence at home, working and supporting his family economically and psychologically; second, a strong supportive network of extended family, friends, teachers, and potential employers, as well as defendant's positive reaction to supervision since his arrest, indicate a high probability of rehabilitation. Supervised release will encourage rehabilitation; violation of supervised release will result in further incarceration.

The following sentence was imposed to adequately protect the public while providing sufficient, but not excessive, punishment of the accused. The sentence imposed was determined solely by the sentencing judge after hearing from the parties.

The court finds the total offense level to be 29 and defendant's criminal history category to be category I, yielding a guidelines range of imprisonment of between 87 and 108 months. Because the loss attributable to the offenses was found to be impossible to determine, the offense level calculation was based upon the court's finding of the proven gain that resulted from defendant's offenses, which was found to be $250,000. See U.S.S.G. § 2B1.1 n.3(B). That amount is ordered forfeited to the government. The extent of loss to Butler's clients, if any, could not be calculated, in part because the investors defrauded were able to hold securities purchased through Butler that were impaired, but that might in time prove to possess some or all of the value of the original investments.

4

The offense charged in Count One carried a maximum term of imprisonment of five years, 18 U.S.C. § 371; the offenses charged in Counts Two and Three each carried a maximum term of imprisonment of twenty years, 15 U.S.C. § 78ff; 18 U.S.C. § 1349. The maximum fine for each of Counts One and Three was double the gain attributable to the offense, or $500,000, see 18 U.S.C. §§ 371, 1349, 3571(d); the maximum fine for Count Two was $5,000,000, see 15 U.S.C. § 78ff. The guidelines range of fines was between $15,000 and $5,000,000. U.S.S.G. § 5E1.2(c).

Butler was sentenced to five years' imprisonment and three years' supervised release on each of Counts One, Two, and Three; all prison terms and supervised release are to be served concurrently. A $300 special assessment was imposed. Fines of $500,000 were imposed for each of Counts One and Three, and a fine of $5 million was imposed for Count Two. Fines were imposed concurrently for a total of $5 million. All of defendant's current assets, estimated to be approximately $3,988,856, minus forfeiture payable forthwith in the amount of $250,000, are to be applied to the fines. Any remaining unpaid amount of fines is to be payable at the rate of 5% of his net income per month after his release from custody, with interest to be waived, permitting support of defendant's family.

No restitution to Butler's victims was ordered, because the extent of any loss to the victims was impossible to determine. It was noted, but not relied upon by the court in denying restitution, that Butler's clients' own conduct in failing to adequately supervise Butler and evaluate the nature of the securities purchased was a contributing factor in any losses they may have suffered. See, e.g., United States v. Berman, 21 F.3d 753, 757 (7th Cir. 1994) ("[E]ven if the bank was negligent, it would be entitled to restitution from a deliberate wrongdoer; contributory negligence is not a defense to fraud.); United States v. Zafar, 291 Fed. App'x 425, 429 (2d Cir. 2008).

5

Respectful consideration was given to the sentencing guidelines, the Sentencing Commission's policy statements, and all other factors listed under 18 U.S.C. § 3553(a) to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

The court imposed a non-guideline sentence under 18 U.S.C. § 3553(a) and Booker, taking into account the defendant's personal situation and characteristics and the circumstances of the financial industry in which he worked.

The court considered the "nature and circumstances of the offense and the history and characteristics of the defendant." See 18 U.S.C. § 3553(a)(1). The offenses of securities fraud and conspiracy to commit securities fraud are serious. Defendant abused a position of power and influence, took advantage of his clients' trust, and defrauded them out of amounts of money which are impossible to calculate, but which may—at the upper bound, as contended by the government—be in excess of one billion dollars. Defendant disregarded his responsibility to the financial well-being of his clients for the sake of his own short-term financial gain, in the form of commissions he earned on fraudulent sales of ARSs.

Defendant is supported by a large community of family and friends, and a wife and child, who have attested to his good character in written submissions to the court.

A sentence of five years' imprisonment, a $5,000,000 fine, a long term of supervised release, a payment to the government of $250,000 gained from the crime, and a special assessment of $300 reflect the seriousness of the offense and will promote respect for the law and provide just punishment. See 18 U.S.C. § 3553(a)(2)(A). He will be stripped of all his assets, which will go to the government.

Under section 3553(a)(2)(B), there are two major considerations in this case: specific and general deterrence. Severe penalties for offenses of this nature may have little effect as general

deterrents in light of the circumstances prevalent in our financial industry over the past years. The general deterrence value of sentencing may pale in comparison to the opportunities for short-term financial gain attainable by fraud such as the defendant's.

The staggering sums involved in this case reflect more than the magnitude of the defendant's fraud. They also evince an industry beset by avarice that has been allowed to run rampant by regulators and negligent supervisors alike. Multiple failures have contributed to the present situation:

- a failure of government regulators and legislators to adequately monitor and supervise potentially fraudulent and abusive activity;

- a failure by purchasers of securities, including sophisticated institutional investors, to exert reasonable control and supervision over transactions made on their behalf;

- a failure by Credit Suisse, Butler's employer, and other financial institutions to adequately supervise their own brokers and traders;

- a failure of the industry generally to implement a compensation and incentive structure consistent with the importance of preventing fraud and other malfeasance; and

- a failure of the rating agencies to properly classify the risks presented by various securities—for example, bundling of subprime mortgages into what were then classified as high quality securities, as in the instant case.

The most compelling aspect of this case may be its illumination of the need to reconsider how compensation is calculated and investment products are marketed by the financial industry. Systemic reform is needed; mere "[c]ompetition in product and capital markets can't be counted on to solve the problem." Jones v. Harris Assoc., L.P., 537 F.3d 728, 730 (7th Cir. 2008)

7

(dissenting from denial of reh'g en banc) (addressing problems relating to fees charged by mutual fund advisors).

To the extent possible under the criminal law, general deterrence is sufficiently satisfied by the sentence imposed. The sentence will send a clear message that involvement in securities fraud will result in a substantial prison sentence and severe financial consequences.

Specific deterrence is achieved through incapacitation, Butler's loss of his securities license, probably his ability to work in the financial sector, and the impact of this conviction on his employability. It is unlikely that he will engage in further criminal activity in light of his continuing supervision, the need to provide for his wife and young son, and the support of his family and many friends and associates.

Jack B. Weinstein
Senior United States District Judge

Dated: January 22, 2010
Brooklyn, New York